IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| OSCAR NUNEZ,<br><br>  Plaintiff,<br><br>v.<br><br>LIFETIME PRODUCTS, INC.,<br><br>  Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 1:14-cv-00025<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Paul M. Warner |

    This matter was referred to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1]  Before the court is a motion for summary judgment by Lifetime Products ("Defendant").[2]  Pursuant to civil rule 7-1(f) of the United State District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful and is not necessary.  *See* DUCivR 7-1(f).  The court carefully reviewed the motion papers submitted by the parties and issues the following report and recommendation.

    As an initial matter, the court notes that Plaintiff is proceeding pro se, and thus the court will "construe his pleadings liberally and hold the pleadings to a less stringent standard than formal pleadings drafted by lawyers."  *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).  That said, Plaintiff's pro se status does not discharge him from having to comply with the court's rules and procedures, and the court will not assume an advocacy role on Plaintiff's behalf.  *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (noting the Tenth Circuit "has

---

[1] Docket no. 52.
[2] Docket no. 53.

repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." (internal citations omitted)); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant."); *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("[W]e will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); *Hill v. Oklahoma*, 18 F. App'x 768, 769 (10th Cir. 2001) ("petitioner's pro se status does not excuse his obligation to comply with the fundamental requirements of civil procedure rules").

## BACKGROUND

Oscar Nunez ("Plaintiff") was employed by Defendant from 2002 until his termination in August 2011.[3] According to Defendant, Plaintiff's employment was terminated due to multiple instances of argumentativeness and insubordination, conflicts with superiors and other employees, repeated failure to comply with company policies and procedures, and a general unwillingness to accept and follow direction and criticism.[4]

After being terminated, Plaintiff filed a grievance with the Utah Antidiscrimination and Labor Division ("UALD") on November 29, 2011. In his complaint, Plaintiff alleged "that Lifetime discriminated against him based on his age and disability" and that "it retaliated against him for requesting an accommodation under the Americans with Disabilities Act . . . ."[5] The UALD found "that [Plaintiff] could not prevail on any of his claims . . . ."[6] Thereafter, Plaintiff filed suit claiming that Defendant (1) discriminated against him in violation of the Age Discrimination and Employment Act ("ADEA"), (2) failed to provide reasonable

---

[3] Docket no. 75 at 2.
[4] Docket no. 53 at 3.
[5] *Id*.
[6] *Id*.

accommodations under the Americans with Disabilities Act ("ADA"), (3) retaliated against him for requesting accommodations under the ADA, and (4) violated his rights under the Family and Medical Leave Act ("FMLA").[7] The alleged causes of action are discussed more fully in the Analysis section below.

Defendant brought the current motion seeking summary judgment on all claims. For the reasons discussed below, the court **RECOMMENDS** that Defendant's motion be **GRANTED**.

## LEGAL STANDARD

Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir. 1991); *Nelson v. Geringer,* 295 F.3d 1082, 1086 (10th Cir. 2002).

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Viktus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that there are genuine issues for trial. *Viktus*, 11 F.3d at 1539; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991)). An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment.

---

[7] Docket no. 2 at 8-12.

*Seymour v. Shawver & Sons, Inc.,* 111 F.3d 794, 797 (10th Cir. 1997). To constitute a genuine factual dispute, there must be more than a scintilla of evidence that is significantly probative in establishing the fact. *Viktus*, 11 F.3d at 1539.

In applying the summary judgment standard, the court construes the factual record and reasonable inferences in the light most favorable to the party opposing summary judgment. *Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir. 1996); *Blue Circle Cement, Inc. v. Bd. of County Comm'rs.,* 27 F.3d 1499, 1503 (10th Cir. 1994); *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991).

## ANALYSIS

Plaintiff alleged violations of his rights under the ADEA, ADA, and FMLA.[8] Defendant moved for summary judgment on each of Plaintiff's claims.[9]

### A. The ADEA Cause of Action

#### 1. All ADEA claims predating February 2, 2011 are time-barred.

Significant portions of Plaintiff's ADEA claim are time-barred. "The [ADEA] provides that 'no civil action may be commenced' in federal court unless the would be plaintiff first files a grievance with the appropriate administrative agency—and does so 'within 300 days after the alleged unlawful practice occurred' . . . ." *Almond v. United School Dist. No. 501,* 665 F.3d 1174, 1176 (10th Cir. 2011); *see also* 29 U.S.C. § 626(d); 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e). "Compliance with this administrative exhaustion requirement and its concomitant limitations period is a condition precedent to bringing suit." *Almond*, 665 F.3d at 1176 (citing *Montes v. Vail Clinic, Inc.,* 497 F.3d 1160, 1167–68 (10th Cir. 2007)). "[T]he clock starts

---

[8] *Id*. at 8-12.
[9] Docket no. 53 at 3-5.

running when the plaintiff first knew or should have known of his injury, whether or not he realized the cause of his injury was unlawful." *Almond,* 665 F.3d at 1176.

Plaintiff filed a grievance with the UALD on November 29, 2011. Any ADEA claims that accrued before February 2, 2011 (300 days before November 29, 2011) are time-barred. Accordingly, any ADEA claim predating February 2, 2011—including Plaintiff's assertions of age-related discrimination in March 2010 and November 2010—are untimely, and Defendant is entitled to summary judgment as a matter of law.

### 2. For any remaining ADEA claim, Plaintiff fails to show that age was a factor in his termination or that the stated reasons for termination were pretextual.

To prevail on any remaining ADEA claim, Plaintiff must prove that "age was the factor that made the difference" in his termination. *Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1277-78 (10th Cir. 2010). Put differently, Plaintiff must show that he would not have been terminated but for his age. For purposes of summary judgment, ADEA claims are analyzed under the burden-shifting framework delineated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). *See Jones*, 617 F.3d at 1277-78.

Defendant provides extensive evidence of a legitimate basis for terminating Plaintiff and that Plaintiff was terminated regardless of age. Defendant repeatedly had issues with Plaintiff being insubordinate, argumentative, confrontational, and resistant to feedback.[10] He violated company policies and procedures on a number of occasions, and clashed with other employees.[11] Defendant's on-site nurse told Defendant's human resources department that Plaintiff yelled and cursed at her and that she did not feel comfortable being alone with Plaintiff outside regular work

---

[10] *See generally* docket no. 53 at ¶¶ 4-41.
[11] *Id.*

hours.[12]  In response to these issues, Defendant warned and counseled Plaintiff repeatedly before eventually terminating him.[13]

Because Defendant "articulate[d] some legitimate, nondiscriminatory reason for its action" with Plaintiff, Plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 947 (10th Cir. 2011).  "Our relevant inquiry for determining pretext is 'whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue, or whether plaintiff can show that the employer's explanation was so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination.'" *Id.* at 947–48 (citing *Young v. Dillon Cos., Inc.,* 468 F.3d 1243, 1250 (10th Cir.2006)).  Plaintiff fails to submit any evidence to call into question the legitimacy of the nondiscriminatory reasons cited by Defendant.  Accordingly, Plaintiff fails meet his burden, and Defendant should be granted summary judgment on the ADEA cause of action.

### B.  The ADA Accommodation Cause of Action

Plaintiff alleges that Defendant violated the ADA by failing to provide reasonable accommodations in connection with requests by Plaintiff on May 9, 2011 and August 3, 2011.  These claims are discussed separately below.

Plaintiff also mentions an alleged accommodation request around March 9, 2010.  However, as with ADEA claims, for an ADA claim to be timely, a claim "shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred."  42 U.S.C.A. § 2000e-5(e)(1); see also *Proctor v. United Parcel Service*, 502

---

[12] *Id.* at ¶ 16.
[13] *See* docket no. 53-2 at Ex. B.

F.3d 1200 (10th Cir. 2007). Plaintiff filed a claim with UALD on November 29, 2011.[14] Again, any ADA claims arising before February 2, 2011 are time-barred.

> **1. Defendant was not aware of a qualifying disability at the time of the May 9, 2011 request for accommodation, and Plaintiff failed to follow established procedures for requesting an accommodation at that time.**

To establish a prima facie case of failure to accommodate under the ADA, Plaintiff must prove "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." *Spielman v. Blue Cross & Blue Shield of Kan., Inc.,* 33 Fed. App'x 439, 443 (10th Cir. 2002). The Tenth Circuit has alternatively described the second element as requiring a showing that "the employer was aware of [plaintiff's] disability." *Allen v. SouthCrest Hospital*, 455 F. App'x 827, 834 (10th Cir. 2011).

Lifetime does not dispute that Plaintiff can satisfy the first and third elements of a prima facie showing.[15] However, Plaintiff fails to submit evidence to support a prima facie showing that Defendant was on notice of or aware of Plaintiff's disability.

The failure to follow reasonable procedures for requesting accommodation has been held sufficient to preclude a claim for failure to accommodate. *See Davis v. George Washington Univ.*, 26 F. Supp. 3d 103, 114 (D.D.C. 2014). Plaintiff does not substantively dispute that he was aware of the procedure for requesting an accommodation and that he failed to follow it. On May 3, 2011, Plaintiff acknowledged receipt of Defendant's employee guidelines.[16] The guidelines state that an employee "may request an accommodation by completing the Disability

---

[14] Docket no. 63 at 20.
[15] Docket no. 53 at 17.
[16] Docket no. 53-2 at 100; *see also* docket no. 56 at 25 (Plaintiff's response of "No comments." to claim he received employee guidelines).

Accommodation Request Form and returning to their <u>Human Resources Manager or any other Human Resource representative</u>" or "by notifying Lifetime's Vice President of Human Resources, its President, its Chief Financial Officer, or any of its Vice Presidents of Operations, Manufacturing, Metals or Plastics."[17]

There is some minor discrepancy regarding how the accommodation issue was first raised to Defendant's attention on or around May 9, 2011. Defendant asserts that the issue arose when Plaintiff's supervisor, Sandy Turbyfill, found Plaintiff sitting while performing quality checks and advised Plaintiff that he could not sit.[18] In response, Plaintiff said that he could do his job better from a seated position and noted that his back was a "secondary" issue. Plaintiff asserts—albeit without any supporting affidavit or evidence—that Plaintiff "requested to his Lifetime's [sic] supervisor—Mr. Turbyfill—a disability accommodation according with the Lifetime's [sic] Employee Guidelines."[19]

As discussed above, Plaintiff's statement that his verbal request to Mr.Turbyfill was pursuant to employee guidelines is clearly false. Perhaps more importantly, portions of the discussion that occurred were memorialized in an email exchange between Plaintiff and Mr. Turbyfill on May 10, 2011 and May 11, 2011.[20] After Mr. Turbyfill advised Plaintiff that Mr. Turbyfill had consulted with the nurse and could not grant an accommodation, Plaintiff dismissed his back as "a secondary issue as I've explained to you today."[21] Plaintiff then proceeded to argue at length why his request was really about performing better quality control.[22] Plaintiff claims in his opposition that the account of the initial conversation is "fabricated," but

---

[17] Docket no. 53 at 41 (emphasis original).
[18] Docket no. 53-4 at 3.
[19] Docket no. 54 at 13.
[20] Docket no. 53-4 at 9.
[21] *Id.*
[22] *Id.*

Plaintiff fails to submit even a "scintilla of evidence" that would call the matter into dispute. To the contrary, Plaintiff does not dispute the authenticity or accuracy of the email exchange discussing the conversation, and Plaintiff even submitted the first email as part of his own opposition and verified its authenticity.[23] Thus, while there is some disagreement about portions of the verbal exchange, the disagreement is immaterial and is insufficient to create a disputed issue of material fact.

Because Plaintiff failed to follow the established procedure for requesting an accommodation and failed to make Defendant aware of a disability entitling him to an accommodation, Defendant should be granted summary judgment on this cause of action.

**2. The August 3, 2011 request for accommodation was granted.**

The August 3, 2011 request for accommodation was granted, and thus cannot give rise to an ADA accommodation claim. On August 3, 2011, Mr. Turbyfill and one of Defendant's human resources managers, Shawna Wilson, met with Plaintiff to discuss Plaintiff's concerns about a July 25, 2011 "Performance Occurrence" stemming from issues with Plaintiff's performance at work. Later that day, Plaintiff submitted a disability accommodation request form seeking permission to sit down for 5 minutes every hour in the typewritten portion.[24] Although not a material issue, the form also a handwritten note "half hour" with the letters "ON"—presumably Plaintiff's initials—in parenthesis.[25] On August 4, 2011, Defendant notified Plaintiff that his request had been granted, but required him to provide appropriate medical documentation within 15 days or the accommodation would be canceled.[26]

---

[23] Docket no. 55-10 at 2 (Plaintiff's exhibit 19May 10, 2011 email referring to "conversation last night concerning your sitting down).
[24] Docket no. 53-5 at 11-12.
[25] *Id.*
[26] *Id.* at 16.

Plaintiff does not dispute the material facts, but contends that he was not accommodated because he was terminated on August 8, 2011. Thus, it is undisputed that Defendant granted the August 3, 2011 request for accommodation. Having done so, Defendant cannot be liable for failure to accommodate. Plaintiff's recourse, if any, would be under his separate ADA retaliation claim, not under an accommodation claim.

### C. The ADA Retaliation Cause of Action

Plaintiff alleges that Defendant unlawfully terminated him as retaliation for requesting an ADA accommodation on August 3, 2011. However, Plaintiff cannot establish a prima facie case of retaliation. *See generally Proctor*, 502 F.3d at 1207-08 (analyzing retaliation claim under the burden-shifting framework delineated in *McDonnell Douglas*).

It is undisputed that four of Defendant's employees—Mr. Holstein, Mr. Turbyfill, Ms. Wilson, and Ms. Wandling—met and decided to terminate Plaintiff on July 29, 2011.[27] This decision was re-affirmed at a human resources department meeting on August 1, 2011.[28] Both of these dates predate Plaintiff's request for accommodation on August 3, 2011, thus precluding any claim that the termination was in retaliation for that request. *See Selk v. Brigham Young Univ.*, No. 2:13-CV-00326-CW, 2015 WL 150250, at *10 (D. Utah Jan. 12, 2015).

In addition, three months elapsed between Defendant's purported May 9, 2011 request and his termination. Given the amount of elapsed time, Plaintiff cannot solely rely on temporal proximity to establish a prima facie showing of causal connection between the request and the termination. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (holding that where elapsed time is between two and three months, "[t]hese events are, under our precedents, probably too far apart for [plaintiff] to establish causation by temporal proximity alone.");

---

[27] Docket no. 53 at ¶¶ 29-31.
[28] *Id.* at 32.

*Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir.1997) (holding three-month period, standing alone, is insufficient to establish causation). "[U]nless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (emphasis original).

Plaintiff fails to submit any additional substantive evidence to establish causation. Positive performance reviews predating the events at issue by years are irrelevant. Further, "[m]ere conjecture that an employer's explanation is pretext is insufficient to defeat summary judgment." *Proctor*, 502 F.3d at 1208.

Accordingly, Defendant should be granted summary judgment on the ADA retaliation cause of action.

### D. The FMLA Cause of Action

Plaintiff claims that Defendant violated his rights under the FMLA when they "fired [him] on August 8, 2011 when he was under an FMLA leave approved by Lifetime on April [1], 2011 due to a serious mental health condition (severe anxiety and severe depression)."[29] Plaintiff contends that this was improper as 29 U.S.C. § 2614(a) "provides that an employee who takes leave must be restored to his former position or an equivalent position when he returns from leave."[30] Additionally, 29 U.S.C. § 2615(a)(1) "prohibits an employer from interfering with an employee's FMLA leave."[31] Plaintiff fails to indicate with specificity whether he intends to proceed with an FMLA interference claim, an FMLA retaliation claim, or both. Each type of claim is discussed separately below.

---

[29] *Id.* at 4.
[30] Docket no. 2 at 11
[31] *Id.*

### 1. Defendant did not interfere with Plaintiff's FMLA rights.

To establish an FMLA interference claim under 29 U.S.C. § 2615(a)(1):

> An employee must show "(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Campbell,* 478 F.3d at 1287 (internal quotation marks and brackets omitted). To satisfy the second element of an interference claim— adverse action interfering with the right to take FMLA leave—"the employee must show that she was prevented from taking the full 12 weeks[ ] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Id.* Thus, an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave. *Id.*

*Dalpiaz v. Carbon Cty., Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014). If a plaintiff can satisfy the first two elements, "the employer then bears the burden of demonstrating that the adverse decision was not 'related to the exercise or attempted exercise of [the employee's] FMLA rights.'" *Id.* The Tenth Circuit has made clear that being "related" requires far more than just arising from the same set of facts or circumstances. *Id.*

Here, Defendant concedes that Plaintiff can satisfy the first two elements. The burden then shifts to Defendant to establish that the adverse decision—in this case, termination—would have been taken regardless of his requesting or taking FMLA leave. As discussed above, Defendant provides ample evidence demonstrating a proper basis for terminating Plaintiff and that Plaintiff would have been terminated regardless of his intermittent FMLA leave.[32] Moreover, while Plaintiff makes conclusory statements and *ad hominem* attacks, he fails to provide any evidence to call into question Defendant's assertions.

### 2. Defendant did not retaliate for Plaintiff's taking FMLA leave.

Plaintiff alleges that Defendant unlawfully retaliated against him for taking FMLA leave under 29 U.S.C. § 2615(a)(2).

---

[32] *See, e.g.*, docket no. 53-2.

> Unlike claims under an interference theory, FMLA claims under a theory of retaliation *are* subject to the burden-shifting analysis of *McDonnell Douglas*. *Metzler,* 464 F.3d at 1170 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). A prima facie case of retaliation requires a showing that (1) the employee engaged in a protected activity, (2) the employer took an action that a reasonable employee would have found materially adverse, and (3) there is a causal connection between the protected activity and the adverse action. *Id.* at 1171. Once a plaintiff establishes the prima facie case, the burden shifts to the employer to demonstrate a legitimate, nonretaliatory reason for termination. *Id.* at 1172. Finally, in order to avoid summary judgment, the employee must show that there is a genuine dispute of material fact as to whether the employer's reasons for termination are pretextual. *Id.*

*Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1229 (10th Cir. 2012).

Defendant appears to concede that Plaintiff can meet his burden for the first two elements. However, Plaintiff fails to establish any causal connection between his FMLA leave and his termination. Plaintiff was granted intermittent FMLA leave on April 1, 2011, more than *four months* before he was terminated. Plaintiff cannot rely on temporal proximity to establish causation. Moreover, Plaintiff does not materially dispute that he had prior FMLA leaves in 2006, 2008, and 2010.

Even if Plaintiff had made a prima facie showing of causation, Defendant presents significant evidence of a legitimate non-retaliatory basis for termination, and Plaintiff fails to establish a "genuine dispute of material fact as to whether the employer's reasons for termination are pretextual." *Id.*

Accordingly, under either an interference or retaliation theory, Defendant should be granted summary judgment on Plaintiff's FMLA cause of action.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.

\* \* \* \* \*

This court will send copies of this report and recommendation to the parties, who are hereby notified of their right to object. *See* 28 U.S.C § 636(b)(1); Fed. R. Civ. P. 72(b). Any objection to this report and recommendation must be filed within fourteen (14) days after a party is served with a copy. *See id.* Failure to object may constitute waiver of objections upon subsequent review.

**IT IS SO ORDERED**.

DATED this 13th day of September, 2016.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge