# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| OSCAR NUNEZ, <br><br> Plaintiff, <br><br> v. <br><br> LIFEETIME PRODUCTS, INC., <br><br> Defendant. | **ORDER ADOPTING REPORT AND RECOMMENDATION** <br><br> Case No. 1:14-cv-00025-RJS-PMW <br><br> District Judge Robert J. Shelby <br><br> Magistrate Judge Paul M. Warner |

In 2001, Defendant Lifetime Products, Inc. fired Plaintiff Oscar Nunez. Believing his firing unlawful, Nunez filed a Charge of Discrimination with the Utah Antidiscrimination and Labor Division, and after that Charge was dismissed, later filed this lawsuit alleging violations of the Age Discrimination and Employment Act (ADEA), the Americans with Disabilities Act (ADA), and the Family Medical Leave Act (FMLA). The case was referred to Magistrate Judge Paul Warner,[1] who issued a Report and Recommendation recommending the court grant Lifetime's Motion for Summary Judgment.[2] Nunez timely objected to portions of the Report and Recommendation.[3] After review of the record, the Report and Recommendation, and Nunez's objections, the court adopts the Report and Recommendation in full.

---

[1] *See* 28 U.S.C. § 636(b)(1)(B). The case was initially assigned to Judge Campbell, who referred the case to a magistrate judge under Section A (Dkt. 18). The case was then reassigned, and Judge Parrish entered a Section B referral (Dkt. 52). Nunez recently filed a motion requesting that the Section A referral be reinstated on the basis that Judge Parrish's Section B referral was invalid because she ultimately recused (Dkt. 86). The court denies the motion. The court reviewed the issues Nunez objected to de novo, which is the same treatment these issues would have received had the case been proceeding under a Section A referral. Moreover, the court finds no error in Judge Parrish's decision to refer this case under Section B.

[2] Dkt. 79.

[3] Dkt. 80.

1

**STANDARD OF REVIEW**

Summary judgment is appropriate only if there is "no genuine dispute as to any material fact" and the movant is "entitled to judgment as a matter of law."[4] Where, as here, a magistrate judge has issued a Report and Recommendation, the court will review de novo any parts of the Report and Recommendation that were objected to.[5] Any part not objected to will be reviewed for clear error.[6]

**ANALYSIS**

Lifetime moved for summary judgment on Nunez's ADEA claims, his ADA claims, and his FMLA claims. The court will address each in turn.

**A. The ADEA Claims**

Nunez contends Lifetime violated the ADEA by discriminating against him based on his age. ADEA claims are assessed under the *McDonnell Douglas* burden shifting framework, which requires that a plaintiff initially demonstrate only a prima facie case of unlawful discrimination, after which the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the adverse employment action.[7] If the employer provides such a reason, the burden shifts back to the plaintiff to show that the employer's proffered reason was pretextual.[8] To make a prima facie case for age-related discrimination,

---

[4] Fed. R. Civ. P. 56(a).

[5] *Id.* 72(b).

[6] *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate.").

[7] *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[8] *Id.*

Nunez must show: (1) he is a member of an ADEA-protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position at issue; and (4) he was treated less favorably than others not in the protected class.[9]

Judge Warner determined that the majority of Nunez's allegations of age-related discrimination are time barred, and any non-time-barred claims fail because Lifetime provided nondiscriminatory reasons for firing Nunez. Nunez did not object to Judge Warner's recommendation with regard to the time-barred claims, and the court concludes that recommendation is correct. It is not clear from the Complaint or the briefing what claims, if any, are not time barred. But what is clear, after de novo review, is that even if Nunez could make a prima facie showing that his firing was age based, Lifetime has met its burden of providing nondiscriminatory reasons for Nunez's firing, and Nunez has not raised a triable issue of fact about whether those reasons are pretextual. For example, Lifetime demonstrate that Nunez received several "Attendance Occurrences" (citations for being absent without permission)[10]; he sent negative and degrading emails and was subsequently required to filter all outgoing mail through his supervisor, a requirement he did not always comply with[11]; he was frequently argumentative[12]; and he yelled at coworkers.[13] Even if Nunez could show that age played some role in his firing, he has provided no evidence that "age was the factor that made a difference," and for that reason, any ADEA claims that are not already time barred fail.[14]

---

[9] *Id.* at 1279.

[10] Dkt. 53-2 Ex. I.

[11] *Id.* Ex. J.

[12] Dkt. 53-3 Ex. B, C.

[13] Dkt. 53-2.

[14] *Jones*, 617 F.3d at 1277.

**B. The ADA Claims**

Nunez asserts two ADA claims. First, he claims Lifetime failed to accommodate his disability. Second, he claims Lifetime retaliated by firing him because he requested an accommodation. Lifetime argues that all properly presented accommodation requests were granted, and that Nunez's firing was unrelated to his requests. Because Nunez timely objected to Judge Warner's conclusions on his ADA claims, these claims will be reviewed de novo.

**i. The ADA Accommodation Claim**

Nunez contends he twice requested a disability accommodation but was denied both times. The court analyzes an ADA accommodation claim under the *McDonnell Douglas* burden shifting framework, meaning Nunez is initially required to make only a prima facie showing of failure to accommodate in order to shift the burden of production to Lifetime.[15] To do so, Nunez must show: (1) he had a disability; (2) Lifetime had notice of the disability; (3) Nunez could perform the essential parts of his job with a reasonable accommodation; and (4) Lifetime refused to provide an accommodation.[16]

Nunez contends he first requested an accommodation on May 9, 2011. On that date, his supervisor found him sitting while performing quality checks. She asked Nunez to stand, and Nunez responded that he should be allowed to sit because he could perform his job better that way, and that as a "secondary issue," standing made his back hurt. Nunez's supervisor later denied his verbal request to sit while performing checks, which Nunez contends was an improper failure to accommodate under the ADA.

---

[15] *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011).

[16] *Bones v. Honeywell Int'l, Inc.*, 223 F. Supp. 2d 1203, 1218 (D. Kan. 2002), aff'd, 366 F.3d 869 (10th Cir. 2004).

Judge Warner concluded this claim failed because Nunez had not met the second element of the claim: adequate notice to Lifetime. Lifetime has a written policy requiring accommodation requests to be presented in writing to an HR representative. Judge Warner concluded, on this basis, that Nunez's oral request to his supervisor did not adequately put Lifetime on notice that he was requesting an accommodation.

Some courts have adopted the view that a failure to follow an employer's procedure for requesting a disability accommodation can preclude a claim for failure to accommodate.[17] The Tenth Circuit has not directly addressed the issue, though it has stated that a "request does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation.'"[18] But it has also suggested—arguably in dicta—that a failure to follow a company policy may be fatal to a subsequent failure-to-accommodate claim.[19]

The court need not resolve in this case whether failure to follow an employer's procedures for requesting an accommodation bars a subsequent claim, for another requirement bars Nunez's claim: the requirement that an employee "make clear that [the employee] wants assistance *for his or her disability*."[20] In this case, Nunez made clear that his request to sit was primarily based on his belief that he could do the job better that way; his "back [was] a secondary issue."[21] Thus, even assuming Nunez's failure to follow Lifetime's accommodation request procedure was not fatal to his claim, the fact that he framed his request as performance

---

[17] *See, e.g.*, *Davis v. George Washington Univ.*, 26 F. Supp. 3d 103, 114 (D.D.C. 2014).
[18] *C.R. England, Inc.*, 644 F.3d at 1038.
[19] *See id.* at 1050 (involving a two week notice requirement for accommodation requests).
[20] *Id.* at 1049 (emphasis in original).
[21] Dkt. 53-4 Ex. A.

based meant Lifetime was not on notice that a disability-based accommodation request was being made. His May 9, 2011 claim fails for that reason.

Nunez also requested an accommodation on August 3, 2011, this time in a formal disability accommodation request document properly submitted to an HR representative requesting permission to sit for five minutes each hour. As Judge Warner properly noted, that request was granted by Lifetime, so it cannot give rise to an ADA claim.

### ii. The ADA Retaliation Claim

Nunez also contends his firing was retaliation for one or both of his accommodation requests. This claim is analyzed under the *McDonnell Douglas* framework as well.[22] To establish a prima facie retaliation claim, Nunez must show: (1) he engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) the materially adverse action was causally connected to the protected activity.[23] Requesting an accommodation is clearly protected, and any employee would deem firing to be materially adverse. But Nunez has provided no evidence to connect the requests and his firing. The only connection between Nunez's May 9 request and his August 11 firing is temporal proximity, and a gap of three months, without more, is not sufficient in the Tenth Circuit to establish a causal connection.[24] And while the August 3 request was much closer to Nunez's August 11 firing, Lifetime decided to terminate Nunez's employment on July 29,

---

[22] *C.R. England, Inc.*, 644 F.3d at 1051.

[23] *Id.*

[24] *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 12321 (10th Cir. 2004) (concluding that temporal gap of two or three months does not, on its own, satisfy the causality requirement of a retaliation claim).

6

2011—several days *before* his request for accommodation.[25] Because Nunez has not demonstrated that either request for accommodation led to his firing, he has not made a prima facie case of retaliation.

## C. The FMLA Claims

Lifetime also moved for summary judgment on Nunez's FMLA claims. Nunez was granted intermittent FMLA leave in March 2011, several months before his firing. He contends his firing both interfered with his ability to exercise his FMLA leave and was in retaliation for taking leave. Nunez timely objected to Judge Warner's conclusions on Nunez's FMLA claims, so those claims will be reviewed de novo.

### i. The FMLA Interference Claim

Nunez first claims his firing interfered with his FMLA leave. FMLA interference claims are not analyzed under the *McDonnell-Douglas* burden shifting framework, but the analysis does involve burden shifting.[26] To demonstrate interference under the FMLA a plaintiff must show: (1) he was entitled to FMLA leave; and (2) an adverse action by his employer interfered with his right to take leave.[27] If he can make that showing, the employer then bears the burden of demonstrating that the adverse action was unrelated to exercise of the employee's FMLA rights.[28]

---

[25] Dkt. 53-2, 53-3, 53-4, 53-5. This information comes from the declarations of the four Lifetime employees who collectively made the decision to terminate Nunez. Nunez objects to this evidence because he "didn't find any electronic records" to back it up. That objection is insufficient to satisfy Nunez's burden of raising a triable issue of fact about whether Lifetime's proffered reason for firing him was pretextual.

[26] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006).

[27] *Dalpiaz v. Carbon Cty., Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014).

[28] *Id.*

Lifetime concedes Nunez has shown the first two elements. But as discussed, Lifetime has met its burden of providing evidence of nondiscriminatory reasons for terminating Nunez and has demonstrated that Nunez would have been terminated regardless of his intermittent FMLA leave. Nunez has not provided sufficient evidence to refute Lifetime's assertions.[29] Thus, his FMLA claim fails.

### ii. The FMLA Retaliation Claim

Nunez also contends Lifetime fired him in retaliation for taking FMLA leave. FMLA retaliation claims are analyzed under the *McDonnell Douglas* burden shifting framework.[30] To establish a prima facie case of retaliation, Nunez bears the burden of showing: (1) he engaged in a protected activity; (2) Lifetime took an action that a reasonable employee would have found materially adverse; and (3) the adverse action is causally connected to the protected activity.[31]

Nunez has not established a prima facie case because he has provided insufficient evidence that his firing was causally connected to his FMLA leave. Nunez was granted leave on April 2, 2011, more than four months before he was terminated. The passage of four months, on its own, is not sufficient to establish causality. But even if it were, as discussed, Lifetime has provided significant evidence of nondiscriminatory justifications for Nunez's termination.

---

[29] In his Objection, Nunez contends that factual disputes preclude summary judgment. It does appear that some facts are in dispute. But the relevant facts necessary to decide this motion are not disputed. The majority of these facts come from emails, letters, employment records, and other documents, the authenticity of which Nunez has not called into question. To the extent factual disputes exist, they are not material to this motion.

[30] *Metzler*, 464 F.3d at 1170.

[31] *Id.* at 1171.

## CONCLUSION

Judge Warner's Report and Recommendation[32] is adopted in full. Lifetime's Motion for Summary Judgment on Nunez's ADEA, ADA, and FMLA claims[33] is GRANTED.[34] Because Nunez is pro se, the court briefly mentions for his benefit that should he wish to appeal this ruling, he has 30 days from the date of this Order to do so.[35] If he wishes to apply to proceed in forma pauperis on appeal to avoid paying fees and costs, he may file a motion with this court accompanied by Appellate Form 4, available on the United States Courts Appellate Rules Forms website.[36] Finally, there are a variety of legal aid organizations Nunez may contact if he requires assistance filing or prosecuting his appeal. The Utah Court website lists some of these resources.[37]

The Clerk of Court is directed to close the case.

SO ORDERED this 26th day of April, 2017.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[32] Dkt. 79.

[33] Dkt. 53.

[34] Additionally, Lifetime's Motion to Strike Nunez's Supplemental Argument (Dkt. 84) is granted. Nunez's Motion for the Court to Review Report and Recommendations (Dkt. 82) is denied as moot.

[35] Fed. R. App. P. 4.

[36] United States Courts, *Appellate Rules Forms*, http://www.uscourts.gov/rules-policies/current-rules-practice-procedure/appellate-rules-forms.

[37] Utah Courts, *Legal Clinics, Agencies & Organizations*, https://www.utcourts.gov/howto/legalclinics/.